[Cite as *Mahoning Cty. Bar Assn. v. Vivo,* 135 Ohio St.3d 82, 2012-Ohio-5682.]

MAHONING COUNTY BAR ASSOCIATION *v.* VIVO.

[Cite as *Mahoning Cty. Bar Assn. v. Vivo,* 135 Ohio St.3d 82,

2012-Ohio-5682.]

*Attorneys—Misconduct—Accepting a case the lawyer is not qualified to handle—*

*Neglecting an entrusted legal matter—Failure to cooperate—One-year*

*suspension, all stayed on condition.*

(No. 2011-0299—Submitted June 6, 2012—Decided December 6, 2012.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 10-074.

_____

**Per Curiam.**

{¶ 1} Respondent, James Vivo of Canfield, Ohio, Attorney Registration No. 0071891, was admitted to the Ohio bar in 2000. The Board of Commissioners on Grievances and Discipline recommends that we suspend Vivo's license to practice law for one year with the entire suspension stayed on condition. We adopt the findings of professional misconduct and the recommended sanction.

**Background**

{¶ 2} Relator, Mahoning County Bar Association, filed a complaint against Vivo on August 16, 2010. The complaint charged Vivo with several violations of the Rules of Professional Conduct stemming from a lawsuit filed against Vivo's clients, Michael and Esther Hayes. The complaint also charged Vivo with failing to cooperate with relator in its grievance investigation.

{¶ 3} On November 29, 2010, after several unsuccessful attempts to obtain information from Vivo, relator filed a motion for default judgment. The board appointed a master commissioner to consider relator's motion. The master

commissioner issued a report finding Vivo in default and made findings of fact, conclusions of law, and a recommended sanction, all of which the board adopted.

{¶ 4} The board's report was certified to this court on February 22, 2011.[1] The board's report recommended that Vivo be suspended from the practice of law for two years, with one year stayed. The board further recommended that Vivo be placed on probation for two years following his year of suspension and that he complete eight hours of continuing legal education in law-office management.

{¶ 5} Vivo filed objections to the board's report. Relator filed an answer brief and a motion to remand the case to the board. On April 12, 2011, we granted relator's motion to remand to the board for consideration of whether Vivo "suffers from a medical condition that disabled him from responding to the allegations made against him * * * and for further action that the board deems necessary."

{¶ 6} On remand, relator filed a motion for leave to file an amended complaint on August 19, 2011. The amended complaint charged Vivo with additional violations stemming from his representation of Cathy Jupp. Vivo opposed the filing of amended complaint, but the panel overruled those objections and allowed the relator to proceed on the additional charges.

{¶ 7} On November 3, 2011, the parties filed stipulations of facts and law and a jointly recommended sanction. The panel held a hearing on November 7, 2011, to address the issue set forth in our remand order. The panel received evidence regarding Vivo's mental-health condition and heard testimony from Vivo on his handling of the Hayes and Jupp matters.

{¶ 8} Following the hearing, the panel made findings of fact, conclusions of law, and a recommended sanction. The panel adopted the parties'

---

1. An amended board report was filed in this court on March 4, 2011, that contained nonsubstantive revisions.

recommended sanction of a one-year stayed suspension conditioned on Vivo's following the course of treatment of his mental-health professional. The board adopted the panel's findings of misconduct and the recommended sanction.

## Misconduct

### *The Esther Hayes Matter*

{¶ 9} In April 2007, Esther and Michael Hayes (now divorced) were sued in their individual capacities and as joint owners of Star Motors, a used-car lot. The Hayeses were served with the complaint on April 18, 2007, and they retained Vivo to defend them shortly thereafter.

{¶ 10} On May 29, 2007, the trial court granted a default judgment in plaintiff's favor because Vivo had failed to answer the complaint. The trial court, however, vacated the default judgment on August 16, 2007. Thereafter, Vivo and plaintiff's counsel engaged in negotiations to settle the case. On October 22, 2007, the trial court filed a judgment entry stating that the case had been settled and dismissed.

{¶ 11} On December 5, 2007, the trial court filed an entry granting the plaintiff's motion to enforce the settlement agreement. In April 2008, the trial court granted the plaintiff's motion for a debtor's examination and ordered the Hayeses to appear for an examination on May 30, 2008. The outcome of that hearing is not reflected in the record. Esther Hayes eventually filed for Chapter 7 bankruptcy protection and discharged any judgment as to her.

{¶ 12} On September 16, 2009, Esther Hayes filed a grievance against Vivo with the Mahoning County Bar Association. The Grievance Committee conducted an investigation. Vivo, however, failed to cooperate in the investigation.

{¶ 13} Based on the grievance and Vivo's failure to cooperate, the board in its initial report found that Vivo failed to answer the complaint in the Hayes matter, failed to return numerous phone calls from Esther Hayes, and settled the

case without the authority of Esther or Michael Hayes. Accordingly, the board found that Vivo had committed violations of Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(3) (requiring a lawyer to keep a client reasonably informed of the status of a matter), 1.4(a)(4) (requiring a lawyer to respond to a client's reasonable request for information), 1.2 (requiring a lawyer to abide by a client's decisions concerning the objects of representation), 4.1 (prohibiting a lawyer from knowingly making false statements of material fact to a third person), and Gov.Bar R. V(4)(G) (requiring a lawyer to cooperate in an investigation of professional misconduct).

{¶ 14} The board certified its initial report to this court on February 22, 2011. Following this court's remand order, Vivo began to cooperate in the investigation. Because of Vivo's cooperation, relator was able to depose Michael Hayes. Hayes testified that Vivo had regularly communicated with him and that he had given Vivo authority to settle the case. Based on Michael Hayes's sworn testimony, relator and Vivo agreed that there was no clear and convincing evidence to support the alleged misconduct, and they stipulated to dismiss the charged violations, except for the failure-to-cooperate charge. The panel agreed and found that the charges should be dismissed. The board accepted the panel's findings.

{¶ 15} We agree with the board that the record does not contain clear and convincing evidence that Vivo's conduct in the Hayes matter violated Prof.Cond.R. 1.1, 1.3, 1.4(a)(3), 1.4(a)(4), 1.2, or 4.1.

*Failure to Cooperate in Disciplinary Investigation*

{¶ 16} On September 21, 2009, relator sent a letter to Vivo notifying him that Esther Hayes had filed a grievance against him and that he was required to submit a written statement setting forth his position on the matter. Vivo was also

4

advised that failure to promptly respond might be deemed a failure to cooperate in the investigation in violation of Gov.Bar R. V(4)(G).

**{¶ 17}** Relator's investigator wrote three additional letters to Vivo, on October 21, November 13, and December 8, 2009, seeking his response to the grievance. Following these unsuccessful attempts to obtain information, a probable-cause panel certified a complaint against Vivo. Vivo did not answer the complaint, and relator moved for default. The board referred the matter to a master commissioner, who issued a report finding that Vivo had failed to cooperate in the grievance investigation in violation of Gov.Bar R. V(4)(G). The board accepted this finding in its February 22, 2011 report.

**{¶ 18}** Vivo's failure to cooperate was the focus of this court's order remanding the case to the board. As noted above, the purpose of our remand was for the board to determine whether Vivo suffered from a medical condition that prevented him from responding to the allegations made against him in the Hayes matter.

**{¶ 19}** On remand before the board, the parties agreed that Vivo suffered from a mental-health condition and that his condition should be considered as a mitigating factor in determining the sanction imposed in the Hayes matter. The parties, however, disagreed as to whether Vivo's mental-health condition should be treated as a defense to the failure-to-cooperate allegation.

**{¶ 20}** Following the presentation of evidence, the panel found that Vivo's mental-health condition could not serve as a defense to the failure-to-cooperate charge. Rather, the condition may be treated only as mitigation. In its April 18, 2012 report, the board adopted the panel's decision.

**{¶ 21}** Before this court, Vivo does not challenge the determination that his mental-health condition was not a defense to the failure-to-cooperate charge. Accordingly, we accept the board's findings of fact and conclusions of law as to this issue.

**{¶ 22}** As to whether Vivo failed to cooperate in the investigation of the Hayes grievance, the panel and the board found clear and convincing evidence to support the charge. The board cited two factors in support: (1) the fact that a master commissioner needed to be appointed to decide the default-judgment motion and (2) the board's February 22, 2011 report certified to this court, which concluded that Vivo had violated Gov.Bar R. V(4)(G).

**{¶ 23}** Vivo did not object to this determination. After review of the record before us, we agree that Vivo repeatedly ignored relator's investigative inquiries. Relator submitted the letters sent by its investigator to Vivo requesting a response to the grievance, and the investigator's affidavit attesting to Vivo's lack of response. Vivo also testified that he failed to respond to relator's inquiries. This evidence, coupled with the findings contained in the board's February 22, 2011 report, constitute sufficient evidence that Vivo violated Gov.Bar R. V(4)(G).

*The Cathy Jupp Matter*

**{¶ 24}** Cathy Jupp hired Vivo in April or May 2002 to represent her in a medical-malpractice claim. In January 2003, Vivo filed suit against the physicians. The defendants answered the complaint and submitted affirmative defenses. On June 6, 2003, the defense filed a motion for summary judgment. Vivo did not inform Jupp of the motion for summary judgment, and he never filed any response in opposition. On July 14, 2003, the trial court granted the defendant's unopposed motion for summary judgment.

**{¶ 25}** In June 2004, Jupp asked Vivo for assistance in regard to an unpaid bill that Jupp owed to a health-care provider. Vivo did not tell Jupp at this time that her case had been dismissed.

**{¶ 26}** In July 2005, Vivo again met with Jupp. This time Vivo told Jupp that her case had been dismissed. He also admitted to Jupp that he was too inexperienced to pursue the medical-malpractice lawsuit that he had filed on her

behalf. Vivo acknowledged that he had committed legal malpractice, and he advised Jupp to hire an attorney to sue him.

{¶ 27} Jupp followed Vivo's advice and sued him for malpractice. The record before the board suggests that there was no merit to Jupp's medical-malpractice claim. Before Vivo filed her medical-malpractice claim, another attorney had filed a personal-injury claim on Jupp's behalf. Jupp's injuries from the alleged medical malpractice (a missed medical diagnosis) were disclosed to the tortfeasor's insurer. And, according to Vivo, the damages for the missed diagnosis were contemplated in the settlement of the personal-injury claim. Despite this, Vivo paid Jupp $40,000 to settle the malpractice claim. Jupp filed her grievance against Vivo after she had been paid.

{¶ 28} The Jupp matter is the subject of relator's amended complaint, which charged Vivo with violating DR 6-101(A)(1) (prohibiting a lawyer from accepting a case that the lawyer is not competent to handle), 6-101(A)(2) (prohibiting a lawyer from providing representation without adequate preparation), 6-101(A)(3) (prohibiting a lawyer from neglecting an entrusted legal matter), 7-101(A)(1) (requiring a lawyer to seek the client's lawful objectives through reasonable means), 7-101(A)(2) (requiring a lawyer to carry out a contract of professional employment), 7-101(A)(3) (prohibiting conduct that prejudices or damages a client), 1-101(A)(4) (prohibiting conduct involving fraud, deceit, dishonesty, or misrepresentation), and 1-101(A)(6) (prohibiting conduct that adversely reflects on a lawyer's fitness to practice law).[2]

{¶ 29} Relator and Vivo stipulated that his actions in the Jupp matter violated DR 6-101(A)(1) and 6-101(A)(3). The parties requested that the panel and board dismiss the remaining violations. The panel and board accepted the stipulations. We adopt these findings of fact and misconduct.

---

2. Because the events giving rise to the Jupp matter occurred before the effective date of the Rules of Professional Conduct, relator alleged violations of the Code of Professional Responsibility.

**Sanction**

{¶ 30} In recommending a sanction, the board considered the aggravating and mitigating factors listed in BCGD Proc.Reg. 10.

{¶ 31} The parties stipulated that Vivo's lack of cooperation in the disciplinary process was the only aggravating factor. BCGD Proc.Reg. 10(B)(1)(e). They also stipulated to the following mitigating factors under BCGD Proc.Reg. 10(B)(2): (a) no prior disciplinary record, (b) lack of dishonest or selfish motive, (c) timely, good-faith effort at restitution, (d) full and free disclosure to disciplinary board and cooperative attitude toward proceedings (after obtaining counsel and mental-health treatment), (e) character and reputation, and (g)(i) through (iv) diagnosed mental disability.

{¶ 32} The panel and board agreed with the stipulated aggravating and mitigating factors. The panel, however, believed that Vivo's mental disability warranted further discussion. The panel stated that Vivo was diagnosed with depression that stemmed primarily from his failed marriage. The panel also noted that Vivo received treatment for his depression long after the events that gave rise to the alleged violations. According to the panel, Vivo's psychologist and mental-health counselor were "comfortable concluding the depression significantly contributed to [Vivo's] misconduct in the Jupp matter as well as his failure to cooperate." The board adopted the panel's findings and conclusions on this issue. The board also accepted the parties' stipulated recommendation of a one-year suspension, stayed in its entirety on the condition that Vivo continue treating his depression with a mental-health professional.

{¶ 33} We agree with the panel and the board that Vivo's depression qualified as a mitigating factor as it relates to his failure to cooperate in the Hayes matter. But, contrary to the board's report, the finding that Vivo's depression was also mitigating as to the Jupp matter finds no support in the record. In fact, Vivo

testified before the board that his depression was not a mitigating factor in the Jupp matter.

{¶ 34} Despite this error, we find no reason to alter the sanction recommended by the board. Vivo recognized that his depression prevented him from practicing law in a competent and ethical manner. He has sought out and received successful treatment for his depression and continues to meet with his treating physician. Vivo has reintegrated himself with his own family and developed a support network to assist in his recovery. And, according to his mental-health professionals, Vivo is capable of returning to a competent, ethical professional practice.

{¶ 35} Accordingly, we adopt the board's recommended sanction. We therefore suspend Vivo from the practice of law in Ohio for a period of one year, with the entire suspension stayed on the condition that Vivo continue to follow the advice of his treating mental-health professional. If Vivo fails to comply with this condition, the stay will be lifted and he will serve the one-year suspension. Costs are taxed to Vivo.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Ronald E. Slipski and David Comstock Jr., for relator.

John J. Juhasz and Lynn Marro, for respondent.

_____