[**Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Mahoning Cty. Bar Assn. v. Vivo,* **Slip Opinion No. 2019-Ohio-1858.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-1858

MAHONING COUNTY BAR ASSOCIATION *v*. VIVO.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Mahoning Cty. Bar Assn. v. Vivo,* Slip Opinion No. 2019-Ohio-1858.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct, including failing to provide competent representation and to keep the client reasonably informed about the status of a matter—Consent-to-discipline agreement—Six-month suspension, stayed on conditions.*

(2018-1440—Submitted January 9, 2019—Decided May 21, 2019.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2018-024.

_____

**Per Curiam.**

{¶ 1} Respondent, James S. Vivo, of Youngstown, Ohio, Attorney Registration No. 0071891, was admitted to the practice of law in Ohio in 2000.

{¶ 2} On December 6, 2012, we suspended Vivo for one year, with the entire suspension stayed on conditions, for his incompetence and neglect in relation

to his handling of a client matter and his failure to cooperate in the disciplinary investigation of his misconduct. *Mahoning Cty. Bar Assn. v. Vivo*, 135 Ohio St.3d 82, 2012-Ohio-5682, 984 N.E.2d 1010.

{¶ 3} In a formal complaint certified to the Board of Professional Conduct on May 4, 2018, relator, Mahoning County Bar Association, charged Vivo with professional misconduct arising from his providing incompetent representation to a client and his failing to reasonably communicate with the client. A panel of the board considered the cause on the parties' consent-to-discipline agreement. *See* Gov.Bar R. V(16).

{¶ 4} The parties stipulated that in early 2013, Nancy Casanta retained Vivo to represent her in bankruptcy proceedings and agreed to pay him $600, in addition to the filing fee of $306. On April 28, 2013, Vivo filed a Chapter 7 bankruptcy petition for Casanta. In June 2013, at a meeting of creditors, Casanta disclosed for the first time to Vivo and the creditors that she had received a large signing bonus for an oil and gas lease in February 2012 and had gifted various amounts to her family members. Based on Casanta's disclosure of this new information, the trustee rescheduled the meeting of creditors and sought additional information from Vivo and Casanta because it seemed that relevant preferential transfers had been made and might need to be avoided.

{¶ 5} Although Vivo provided the trustee with some information regarding the disposition of the signing bonus, the trustee did not consider the information to be complete, and on July 19, 2013, the trustee filed an order for Casanta to appear and show cause for her failure to provide additional information. Because Casanta's family members would not be able to repay the preferential transfers, neither Vivo nor Casanta provided additional information to the trustee. Vivo stipulates that his plan was to wait for Casanta's discharge to be denied and then to file a new petition "at a later date when the Trustee would no longer have jurisdiction over the signing bonus." But as a matter of law, Vivo's strategy would

not work as he intended, because a denial of discharge would render the debts scheduled permanently nondischargeable, which was contrary to Casanta's desired outcome. Nevertheless, Casanta's recent money transfers to family members and her failure to advise Vivo of the transfers prior to his filing the petition were possibly fatal to her bankruptcy case, and thus, most of the harm to Casanta was self-inflicted and little to no harm was caused by Vivo.

**{¶ 6}** On October 14, 2013, the trustee filed an objection to discharge, as well as an adversary complaint against Casanta. Vivo did not file an answer or any other documents in the adversary case, and Casanta was not aware of the filings. The trustee filed a motion for default judgment, Vivo did not file a response, and the motion was granted against Casanta. On December 23, 2013, an order denying discharge was entered in the bankruptcy case, which rendered the debts scheduled in the case permanently nondischargeable. Vivo did not communicate these developments to Casanta, and she believed that her case remained pending. Over the next several years, Casanta repeatedly called and met with Vivo to discuss her case, but she remained unaware of the disposition of the case.

**{¶ 7}** On October 21, 2016, Vivo filed a new Chapter 7 bankruptcy petition on Casanta's behalf, and he advanced the filing fee himself. Casanta claims not to have been aware of the filing of a new case on her behalf; however, her handwritten signature appears on the declaration of petitioner filed in the new case. The debts sought to be discharged in the new case were virtually identical to the debts scheduled for discharge in the prior Chapter 7 case. As a result, on November 23, 2016, the trustee filed a motion to dismiss the new case on the basis that the listed debts were permanently nondischargeable because they were scheduled in the prior case, in which discharge had been denied. Because the motion accurately reflected the law and facts at issue, Vivo did not file a response. On December 22, 2016, the motion to dismiss was granted and the new Chapter 7 case was dismissed.

{¶ 8} The parties stipulated and the board found that the conduct set forth above violated Prof.Cond.R. 1.1 (requiring a lawyer to provide competent representation to a client), 1.3 (requiring a lawyer to act with reasonable diligence in representing a client), 1.4(a)(1) (requiring a lawyer to promptly inform the client of any decision or circumstance with respect to which the client's informed consent is required), 1.4(a)(2) (requiring a lawyer to reasonably consult with the client about the means by which the client's objectives are to be accomplished), 1.4(a)(3) (requiring a lawyer to keep the client reasonably informed about the status of a matter), and 1.4(a)(4) (requiring a lawyer to comply as soon as practicable with reasonable requests for information from the client). Relator agreed to dismiss one additional alleged violation.

{¶ 9} The parties stipulate that Vivo's prior disciplinary offenses are aggravating factors here, *see* Gov.Bar R. (V)(13)(B)(1), and that his timely and good-faith effort to make restitution to Casanta and his full and free disclosure to the board and cooperative attitude toward the disciplinary proceedings are the relevant mitigating factors, *see* Gov.Bar R. V (13)(C)(3) and (4).

{¶ 10} The board recommends that we adopt the parties' consent-to-discipline agreement and suspend Vivo from the practice of law for six months, with the entire suspension stayed on the conditions that he complete six hours of continuing legal education ("CLE") in law-office management and commit no further misconduct. It further recommends that he serve one year of monitored probation.

{¶ 11} The panel considered a number of cases in which we sanctioned attorneys for similar rule violations, and it focused on cases in which we either issued a public reprimand or imposed a conditionally stayed six-month suspension for the attorney's misconduct involving incompetent representation and/or neglect of a client. *See, e.g., Mahoning Cty. Bar Assn. v. Mickens*, 154 Ohio St.3d 72, 2018-Ohio-2630, 111 N.E.3d 1125; *Columbus Bar Assn. v. Kluesener*, 150 Ohio

St.3d 322, 2017-Ohio-4417, 81 N.E.3d 457; *Disciplinary Counsel v. Peck*, 150 Ohio St.3d 130, 2017-Ohio-2961, 79 N.E.3d 545; *Lorain Cty. Bar Assn. v. Nelson*, 144 Ohio St.3d 414, 2015-Ohio-4337, 44 N.E.3d 268. We find *Kluesener* and *Mickens* to be most instructive.

**{¶ 12}** In *Kluesener*, we adopted a consent-to-discipline agreement and imposed a conditionally stayed six-month suspension for similar rule violations arising from the attorney's incompetence and neglect in his handling of a client matter. In *Mickens,* we imposed a six-month conditionally stayed suspension on an attorney with prior discipline who failed to reasonably communicate with a single client, neglected the client's legal matter, and failed to inform the client that he did not maintain professional-liability insurance. But we also required Mickens to make restitution to the client affected by his misconduct, complete six hours of CLE in law-office management, and serve a one-year period of monitored probation. Because the misconduct of Vivo is sufficiently similar to the misconduct in these two cases, imposition of a similar sanction is warranted.

**{¶ 13}** Based on the foregoing, we agree that Vivo's conduct violated Prof.Cond.R. 1.1, 1.3, and 1.4(a)(1), (2), (3), and (4) and that a six-month suspension, stayed on the recommended conditions, and one year of monitored probation is the appropriate sanction for that misconduct. We therefore adopt the parties' consent-to-discipline agreement.

**{¶ 14}** Accordingly, James S. Vivo is suspended from the practice of law in Ohio for six months, with the entire suspension stayed on the conditions that he complete six relator-approved hours of CLE in law-office management, in addition to the requirements of Gov.Bar R. X, and engage in no further misconduct. He must also serve one year of monitored probation in accordance with Gov.Bar R. V(21). If Vivo fails to comply with any condition of the stay, the stay will be lifted and he will serve the full six-month suspension. Costs are taxes to Vivo.

Judgment accordingly.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

KENNEDY, J., dissents and would remand the cause to the Board of Professional Conduct.

_____

David C. Comstock Jr. and J. Michael Thompson, Bar Counsel, for relator.

James S. Vivo, pro se.

_____